AB:JML

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

CHRISTOPHER WALCOTT,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

(18 U.S.C. § 924(c)(1)(A)(iii))

Case No. 21-MJ-425

EASTERN DISTRICT OF NEW YORK, SS:

    URIEL HENRY, being duly sworn, deposes and states that he is a Detective with the New York City Police Department, duly appointed according to law and acting as such.

    On or about April 5, 2021, within the Eastern District of New York and elsewhere, the defendant CHRISTOPHER WALCOTT did knowingly and intentionally use or carry one or more firearms during and in relation to a drug trafficking crime, and did knowingly and intentionally possess said firearms in furtherance of said drug trafficking crime, one or more of which firearms were discharged.

    (Title 18 United States Code, Section 924(c)(1)(A)(iii))

    The source of your deponent's information and the grounds for his belief are as hfollows:

    1.    I started at the New York City Police Department fourteen years ago and I have been a Detective for about five years. During my time in the Department, I was involved in the investigation of numerous cases involving narcotics, firearms, and violent crimes. Before becoming a detective, I worked as a plain clothes officer in the anti-crime unit for four years. In

that unit, I observed dozens of hand-to-hand drug transactions.  I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.[1]

2. Early in the morning on April 5, 2021, video from 620 East 108th Street captured a man, later identified as CHRISTOPHER WALCOTT, wearing a black and yellow hat, a black and yellow shirt, and black and yellow shoes in the lobby of the building, which was well-lit.  The video shows this man meeting with Victim-1 and Victim-2.  During this meeting, Victim-2 was on FaceTime with Victim-3 who was in their car nearby.  While Victim-2 was in the lobby, she removed money from her pocket. Victim-1, Victim-2, and WALCOTT then walked down the hallway.  When they came back, Victim-2 no longer had her money.  Instead, she was carrying something small in her hand.  Based on my training and experience, the footage in this video is consistent with the participants' engaging in a hand-to-hand drug transaction.

3. After Victim-1 and Victim-2 left 620 East 108th Street and walked toward their car, video surveillance footage shows WALCOTT holding money up to the light, as if he were trying to determine whether that money was counterfeit.  He then went on an elevator and came back to the first floor a few minutes later wearing a jacket over his black and yellow shirt. He exited the building and began talking to a man dressed in gray sweatpants and a gray sweatshirt.  Both men walked toward a nearby parking lot.  Victim-1, Victim-2 and Victim-3 were in their car, which was parked in that parking lot.  Also in the car was Victim-4, a one-

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

year-old girl.   The man in gray walked past the front of the victims' car while WALCOTT walked toward the back of the car.

    4.  As the car began to pull out of the parking lot and drive away, surveillance video shows WALCOTT taking out a gun and shooting at the car.   Shotspotter, an audio surveillance program designed to detect gunshots, recorded the sound of eleven shots being fired in the area.   Several bullets hit the car near the front passenger's seat, while other bullets hit a nearby parked car.   Police officers later recovered nine shell casings from the scene.

    5.  The victims were not injured in the shooting, and they were able to get away.   Shortly after the shooting, one of the victims called 911.   The victim frantically told the 911 operator that someone had shot at them.   During the 911 call, one of victims said the shooter was a man who had just sold them "E" (a schedule I drug also referred to as ecstasy, Molly, or MDMA).   In a subsequent interview, one of the victims confirmed that they had gone to the building to buy ecstasy from the man later identified as WALCOTT.   Another officer unfamiliar with the case then administered a double-blind photo array to one of the victims.   That victim identified WALCOTT in the photo array as the man who shot at them.

    6.  I also reviewed the video from the building and compared it to WALCOTT's picture on file.   Based on my training and experience, I concluded that the man in the video wearing black and yellow was WALCOTT.   Two still shots of WALCOTT from the surveillance video are below:

 

7.      Because public filing of this document could result in a risk of flight by the defendant, as well as jeopardize the government's ongoing investigation, your deponent respectfully requests that this affidavit and complaint, as well as any arrest warrant issued in connection with this affidavit and complaint, be filed under seal.

WHEREFORE, I respectfully request that an arrest warrant be issued for the defendant CHRISTOPHER WALCOTT so that he may be dealt with according to law.

_____
URIEL HENRY
Detective, New York City Police Department

Sworn to before me by telephone this
7 day of April, 2021

_____
*Lois Bloom*
THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK